UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VICTOR M. SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| Daniel Blair, Lieutenant- Potosi ) | |
| Correctional Center ) | |
| ) | |
| Timothy Williford, C.O.I (P.C.C.) ) | |
| ) | |
| FOX, C.O.I (P.C.C.) ) | |
| ) | |
| Garry Branch, Captin (P.C.C.) ) | |
| ) | |
| John Doe, C.O.I (P.C.C.) ) | |
| ) | |
| Shannon R. Clubb, C.O.I (P.C.C.) ) | |
| ) | |
| Individually and in their ) | |
| official capacity ) | |
| ) | |
| Defendants, ) | |

**CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. §1983**

**I. JURISDICTION & VENUE**

1. This is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. section 1331 and 1343(a)(3). Plaintiff's claim for injunctive relief are authorized by 28 U.S.C. section 2283 & 2284 and Rule 65 of the Federal Rules of Civil procedure

2. The Eastern District Court of Missouri is an appropriate venue under 28 U.S.C. section 1391(b)(2) because the actions giving rise to these claims occured in Washington County, Missouri.

## II. Previous Civil Actions

3. Plaintiff has filed no other civil actions in State or Federal court dealing with the same facts involved in this action. Nor any civil action relating to his conditions of confinement or treatment.

## III. Plaintiff

4. Plaintiff, Victor M. Santiago, is and was at all times mentioned herein a prisoner of the State of Missouri in the custody of the Missouri Department of Corrections. He is currently confined in South Central Correctional Center, in Licking, Missouri.

## IV. Defendants

5. Each Defendant stated herein must be served process, pursuant to Fed.R.Civ.P. 4(c)(2), at their place of employment. Their address is: Potosi Correctional Center, 11593 State Highway O, Mineral Point, Mo. 63660.

6. Defendant, Daniel Blair is a correctional officer of the Missouri Department of Coreections who, at all times mentioned in this complaint, held the rank of Lieutenant and was assigned to Potosi Correctional Center.

7. Defendant, Timothy Williford is a Correctional officer of the Missouri Department of Corrections who, at all times mentioned in this complaint, held the rank of Correctional officer one and was assigned to Potosi Correctional Center.

8. Defendant,      Fox is a correctional officer of the Missouri Department of Corrections who, at all times mentioned in this complaint, held the rank of correctional officer one and was assigned to Potosi Correctional Center.

9. Defendant, Gary Branch is a correctional officer of the Missouri Department of Corrections who, at all times mentioned in this complaint, held the rank of Captain and was assigned to Potosi Correctional Center.

10. Defendant, John Doe is a correctional officer of the Missouri Department of Corrections who, at all times mentioned in this complaint, held an unknown rank and was assigned to Potosi Correctional Center.

11. Defendant, Shannon R. Clubb is a correctional officer of the Missouri Department of Corrections who, at all times mentioned in this complaint, held the rank of correctional officer one and was assigned to Potosi Correctional Center.

12. Each defendant is sued individually and in his official capacity. At all times mentioned in this complaint each defendant acted under the color of State law.

### V. Facts

13. On July 25, 2008, at approximately 9:25 A.M., Plaintiff was summoned to the office area of the recreation department at Potosi Correctional Center. Upon arrival, Plaintiff was confronted by an unknown correctional officer and Defendant Daniel Blair. Plaintiff was asked why he had failed to report to work at food service. Plaintiff was then escorted to food service by the unknown correctional officer.

14. At approximately 9:30 A.M., Plaintiff was brought before correctional officer Sergeant Daniel Dicus. Plaintiff was given an order to explain why he had failed to report to his work assignment. Plaintiff informed Sgt. Dicus that he had not been made aware of the assignment, and asked when it had been made.

Upon checking the computer, Sgt. Dicus discovered that Plaintiff had been assigned to work food service on July 23, 2008. And that Plaintiff had not reported then or on July 24, 2008. After discovering that Plaintiff had not been issued a conduct violation for these days, Sgt. Dicus informed Plaintiff not to worry about it, and to just go to his work assignment.

15. At approximately 10:45 A.M., Plaintiff and other workers were informed to retrieve their lunch meal, and proceed to the designated inmate worker eating area. After all the inmate workers had gathered in this room, the single door accessing the room was closed and locked in preparation for the 11:15 A.M. institutional count.

16. At approximately 10:55 A.M., the door to the secured inmate eating area was unlocked, and Defendant Blair signaled Plaintiff to come out to the food preparation area. Plaintiff stepped out of the room, the room was locked and secured behind him. Plaintiff was then confronted by Defendant Blair, who told him "you're a liar" and to go change his work clothes because he was being taken to administrative segregation.

17. Plaintiff was escorted to a 10 x 3' utility closet, at the rear of the food preparation area, by correctional officer Nash. While Plaintiff was standing in the utility closet stripped to his boxer shorts, Defendant Blair appeared in the doorway, and once again engaged in verbal harrassment. This lead to exchange of insults, which resulted in Defedant Blair pulling his handcuffs out and stepping into the closet stating he'd "kick" Plaintiff's "ass." Assuming a defensive position, Plaintiff told Defendant

Blair that if he touched him he'd "drop" him. Defendant Blair immediately called a code 10-5 (Need help-Location) on his radio. After about sixty seconds, and the arrival of some two-dozen staff, Defendant Blair then ordered Plaintiff to turn around and cuffup. Plaintiff complied without resistance.

18. Defendant Blair then grabbed Plaintiff's left hand and in forcing the handcuff onto his left wrist, lacerated it. Defendant Blair then applied the other handcuff to Plaintiff's right wrist, tightening it to the crushing point. After doing so, Defendant Blair stated to Plaintiff, "let me lock the safety, we wouldn't want them to accidentally tighten on you." The result of these acts is that plaintiff suffered dermal scaring to his left wrist, and permanent nerve damage to his right hand thumb and forefinger.

19. After being handcuffed, Plaintiff was escorted through the food preparation area of the kitchen by the Defendant Timothy Williford. While holding Plaintiff's upper left arm, and pushing him forward, Defendant Williford began digging his fingers, deeply, into the bicep muscle of Plaintiff's left arm. Plaintiff told Defendant Williford to quit "manhandling" him. Defendant Williford stated "what are you going to do about it, tuff guy." To which Plaintiff replied, "I ain't gonna let you blow me anymore." Defendant Williford immeadiately swung Plaintiff, in an arc, to his left, face first toward a brick wall.

20. Plaintiff, seeing the wall come at his face, pivoted to his left and back, in order to avoid injurie to his face or head. However, Plaintiff slammed into the brick wall. Striking it with

the right side of his body. the result of these acts, by Defendant Williford, is that Plaintiff suffered finger point contusions on his upper left arm, a torn bicep muscle, a sprained right elbow, which had a bruise about three inches in diameter above it, severe bruising and injury to his right hip.

21. Plaintiff, after bouncing off the brick wall, was standing still next to the wall when he heard Defendant Williford holler "you son of a bitch." Plaintiff then seen Defendant Fox step from behind his left side, and without warning or order of compliance, Defendant Fox sprayed Plaintiff with chemical mace directly in thew eyes, mouth and nose. Plaintiff was blinded and could not see.

22. Plaintiff, while handcuffed and incapacitated by chemical mace, was thrown face first onto the floor. Several correctional officers then dropped their full body weight, knee first, into Plaintiff's back and on his neck and head. While pinning Plaintiff to the floor, awaiting the arrival of leg restraints, a correctional officer bent his right leg up and onto his lower back. The result of these acts was a swollen right eye, multiple bruised ribs and a hyperextended right knee.

23. After the leg restraints were applied, Plaintiff was picked up off the floor by two correctional officers. As Plaintiff was being escorted out the rear door of the food preparation area, Defendant John Doe reached down and grasped Plaintiff's left hand bending it upward sharply. The result of this action was a dislocated left wrist. Which resulted in severe swelling, immobility and acute pain, lasting several week's.

24. At approximately 11:10 A.M., Plaintiff was seated in the inmate housing wing of the Potosi Correctional Center's medical department. Still blinded by chemical mace, and surrounded by multiple correctional officers, Plaintiff informed the attending nurse that his left wrist had been dislocated and that he had lost all feeling in that hand. The nurse asked a correctional officer, to Plaintiff's left, if he could loosen the handcuff. The correctional officer relayed the nurse's request to Defendant Gary Branch, who was standing behind Plaintiff. Defendant Branch Stated, "No, he's fine."

25. The nurse then attempted to wipe the mace out of Plaintiff's right eye. When this proved ineffectual, due to the copious amount of chemical mace covering Plaintiff's face, the nurse informed Defendant Branch that Plaintiff needed to be placed in a shower to remove the mace. Defendant Branch stated, "leave him, maybe he'll think twice before he threatens one of us." Plaintiff remained seated and covered in chemical mace for another twenty to twenty-five minutes. The result of this act was that Plaintiff suffered chemical burns to the inside of his nose, throat and sinous passage. Eye inflammation which lasted several days, and severe discomfert to the skin of his face, neck and back.

26. On February 22, 2009, Defendant Shannon R. Clubb approached Plaintiff's administrative segregation cell and engaged him in conversation concerning Plaintiff's filing of an excessive force grievance. Defendant Clubb stated to Plaintiff "I know those guys" and that Plaintiff "would be smart to just drop it." Plaintiff

informed Defendant Clubb that he had no intention of dropping it. Defendant Clubb then stated that "if you know what is good for you, you will leave Lt. Blair out of it." Plaintiff asked Defendant Clubb if he was threatening him, to which Defendant Clubb replied that "maybe a couple more year's in the hole will knock that tuff as attitude out of you, I can make that happen" or maybe we'll find you hanging in one of these cells." Defendant Clubb started laughing, and said "think about it."

27. On March 2, 2009, Defendant Clubb, after removing the lunch trays from Plaintiff's cell, attempted to remove a sheet Plaintiff had placed in the crack of the door due to the excessive noise. This sheet, however, had a knot in one end and would not fit. Defendant Clubb told Plaintiff to remove it, which he did.

28. Defendant Clubb ordered Plaintiff to throw the sheet out the food port. Plaintiff informed Defendant Clubb that the sheet was one of the two issued to him by policy, and that his confiscation of it was not an option open to him. Defendant Clubb then stated "I'll come in there and take it from you, motherfucker." Defendant Clubb then lifted the food port door to the closed position, and, after looking around behind him, lowered it back down to the open position.

29. Sergeant christy Huffman, after listening to Plaintiff's recital of the facts stated in paragraphs twenty-seven and twenty-eight above, instructed Plaintiff to submit to restraints for removal from the cell. Plaintiff complied and was physically escorted from the wing by Defendant Clubb.

30. At approximately 12:00 P.M., Plaintiff was taken to B-wing in housing unit two. Plaintiff was stripped searched and permitted to keep only a pair of boxer shorts. Plaintiff was then escorted to cell Fifteen, a one man cell, which contained no mattress. Upon further inspection, Plaintiff discovered that the sink and toilet had been turned off.

31. At approximately 1:00 P.M., Sgt. Huffman came to Plaintiff's cell with Defendant Clubb. After reading Plaintiff his Miranda warnings, Sgt. Huffman read Plaintiff a conduct violation report which charged Plaintiff with assaulting Defendant Clubb. The report, written by Defendant Clubb, stated that Plaintiff "hit the food port striking my left hand."

32. At approximately 3:00 P.M., correctional officer Parsons came to Plaintiff's cell with a single blanket. Plaintiff asked C.O. I Parsons where the rest of his property was; why there was no mattress, and why the sink and toilet did not work. Plaintiff was informed that "per Lt. Blair" his property was removed and the conditions imposed. That when Plaintiff "learn[ed] how to act" his property would be returned.

33. At Approximately 3:20 P.M., Defendant Clubb Approached Plaintiff's cell door and stated "I told you" and then "next paper work is for you suicide."

34. On March 3, 2009, Plaintiff was awakened by a Sgt. Forbes, who asked him what was going on. Unknown to Plaintiff, Defendant Blair was standing to the left of his door, just out of sight. Plaintiff recited the facts outlined above to Sgt. Forbes who shook

his head and walked away. At this point Defendant Blair Stepped into view and stated "your going to learn" and "things are going to get worse."

35. On March 3, 2009, C.O. I Coulton came to Plaintiff's cell and informed him that he was being moved to housing unit one. Plaintiff was handed a netted mask and informed he must wear it. Plaintiff was then escorted to housing unit one, and placed in cell nineteen. A close observation cell.

36. On March 10, 2009, Plaintiff was brought before a disciplinary Action Board for a hearing on the allegation of assault made by Defendant Clubb. Plaintiff was summarily found guilty of assaulting Defendant Clubb and given additional disciplinary segregation time.

### VI. Legal Claims

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36.

38. Defendant Daniel Blair's use of excessive force violated Plaintiff's rights, and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

39. Defendant Timothy Williford's use of excessive force violated Plaintiff's rights, and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

40. Defendant Fox's use of excessive force violated Plaintiff's right's, and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

41. Defendant Gary Branch's deliberate indifference to Plaintiff's health and safety needs contributed to and exacerbated Plaintiff's injuries, constituting unnecessary and wanton infliction of pain prohibited by the Eighth Amendment to the United States constitution.

42. Defendant John Doe's use of excessive force violated Plaintiff's rights, and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

43. Defendant Shannon R. Clubb's death threats and falsifying of a conduct violation report, for assault, were in retaliation for Plaintiff's engaging in a protected activity, and violated Plaintiff's rights under the First Amendment to the United States Constitution.

## VII. Prayer For Relief

45. A preliminary and permanent injunction ordering Defendants Daniel Blair, Timothy Williford, Fox, John Doe and Shannon R. Clubb be prohibited from working at the same correctional institution in which Plaintiff may be confined.

46. Compensatory damages in the amount of $25,000 against each defendant, jointly and severally.

47. Punitive damages in the amount of $50.000 against each defendant, jointly and severally.

48. A jury trial on all issues triable by a jury.

49. Plaintiff's cost in this suit.

50. any additional relief this court deems just, proper, and equitable.

Respectfully Submitted,

*Victor M. Santiago*
Victor M. Santiago/ Pro Se
Reg.No. 525003
255 West Highway 32
Licking, Mo. 65542

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except to those matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Licking, Missouri on May 24, 2009.

By: *Victor M. Santiago*
Victor M. Santiago