UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VICTOR M. SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:09-CV-00933-HEA |
| v. ) | |
| ) | |
| DANIEL BLAIR, et al., ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S TRIAL BRIEF

Plaintiff Victor Santiago files this Trial Brief pursuant to the Court's Order.  Plaintiff asserts claims under 42 U.S.C. § 1983 based upon the Defendants excessive use of force in violation the Eighth Amendment and retaliation for his use of the prison grievance process in violation of the First Amendment.  The relevant legal precedent and its application to these claims is set forth below.

    I.    **Excessive Use of Force**

As the Eighth Circuit noted in the appeal of this case, the core judicial inquiry in an excessive use of force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013), citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  Such a determination may be evaluated in light of "the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Smith v. Conway*, 759 F.3d 853, 858 (8th Cir. 2014).  "The extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and

of itself a threshold requirement for proving this type of Eighth Amendment claim." *Santiago*, 707 F.3d at 990, quoting *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

The evidence will show that the Defendants Blair, Williford, Parsons and Fox used excessive force against Plaintiff in escorting him from the kitchen area. Just before 9:30 a.m. on July 25, 2008, Plaintiff Santiago was informed that he was supposed to report to the kitchen because he had been assigned to work there. Plaintiff immediately reported to the kitchen and met briefly with Sergeant Daniel Dicus, the officer in charge of the kitchen area. Plaintiff informed Dicus that he did not know that he had been assigned to work in the kitchen, and Dicus told Plaintiff not to worry about it and simply to report for work. Plaintiff did so.

Approximately 1 ½ hours later, Defendant Blair showed up at the kitchen and informed Santiago that he was sending him to Temporary Administrative Segregation Confinement ("TASC") for failure to report work. Blair told Santiago to go to the kitchen strip out room to change clothes, which Santiago did, escorted by corrections officer Randy Nash.

Defendant Blair followed Santiago and Nash to the strip out room and he and Santiago exchanged verbal insults and threats. Blair then initiated a 10-5 call for an officer in need of assistance, and demanded that Santiago submit to handcuffs. Santiago submitted to handcuffs just before or just as other officers arrived in response to the 10-5 call. When Blair placed the handcuffs on Mr. Santiago, he tightened them to the point that they were injuring Santiago. Santiago's later medical examination confirmed injuries to his wrist.

Defendants Williford, Fox and various other correction officers then began escorting the Plaintiff Santiago, whose hands were cuffed behind his back, to the medical unit before taking him to Administrative Segregation. During the escort, Defendant Williford dug his fingers into

2

Santiago's arm, inflicting pain.  When Santiago complained, Williford commented "what are you going to do about it?"  Santiago responded with a disparaging remark, which angered Williford.

Immediately after turning down a hallway and out of view of the security cameras, Williford slammed Santiago into the wall, injuring Santiago's right shoulder and hip.  Defendant Fox then applied copious amounts of pepper spray to Santiago's face, blinding him.  Williford then threw Plaintiff Santiago, who was handcuffed and incapacitated by pepper spray, face first onto the ground.  Various other officers jumped onto Plaintiff, causing additional injuries.  After leg restrains were applied, Santiago was lifted back up.  As Plaintiff was being escorted out of the hallway of the food preparation area, Defendant Parsons sharply and forcefully bent up Plaintiff's left hand, resulting in intense pain and injury to Plaintiff's left wrist.

The evidence will show that this use of force against Plaintiff was excessive and not necessary to subdue Santiago, who complied with Defendant Blair's request to submit to handcuffs and was not resisting as he was being escorted with his arms handcuffed behind his back flanked by multiple corrections officers.  Although Santiago may have been upset with his treatment, he did not pose at threat to Defendants or other prison staff members after he was handcuffed.  The force exerted against him by Defendants was not necessary to maintain or restore discipline us and was not applied in a good faith effort to do so, but rather maliciously and sadistically to cause harm to Plaintiff.

## II.    Retaliation

"The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in this circuit for more than twenty years." *Santiago,* 707 F.3d at 991, citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50.  To prevail on a § 1983 claim for retaliation in violation of First Amendment rights, a plaintiff must demonstrate (1) that he

engaged in protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

As set forth by the 8th Circuit in the prior appeal in this case:

> We have long held that "a threat of retaliation is sufficient injury if made in retaliation for an inmate's use of the prison grievance procedures." *Burgess v. Moore*, 39 F.3d 216, 218. This is true especially when the threats are of are ones of death or serious harm to an inmate's safety. *See, e.g., Burton v. Livingston*, 791 F.3d 781, 784 (8th Cir. 1986)(holding that allegations that a prison guard retaliated against a prisoner by terrorizing him with threats of death, if proved, would constitute a violation of the prisoner's First Amendment rights); *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999)(per curium) (holding that threats to an inmate's safety after his use of the prison grievance system supported a retaliation claim).

*Santiago*, 707 F.3d at 992.

The ordinary firmness test is an objective test – the inquiry is whether the threats would have chilled a prisoner of ordinary firmness from engaging in the protected conduct. *Santiago*, 707 F.3d at 992, citing *Garcia v. City of Trenton*, 348 F.3d 726, 729. As this court has noted, threats of death issued by a correctional officer, would chill a prisoner of ordinary firmness from pursuing the grievance process. *Santiago*, 707 F.3d at 992-93 , citing *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010)("Threats alone can constitute an adverse action if the threat is capable of deterring a person of ordinary firmness from engaging in protected conduct."); *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007) (physical and verbal intimidation sufficient to chill a person of ordinary firmness from pursuing protected activity).

The evidence will show that Defendant Clubbs threatened Plaintiff Santiago and made statements to him implying that if he did not drop his excessive force grievance against Blair, he

4

would be found hanging in his cell and that it would be made to look like a suicide. Such threats clearly would deter a prisoner of ordinary firmness from pursuing the grievance process. Further, the threats were made around the same time that Santiago's appeal of the denial of his grievance was denied and at a time when Santiago was considering whether to continue pursuing his claim in the courts. This evidence supports a finding that Clubbs retaliating against Plaintiff for his use of the prison grievance system.

Similarly, the evidence will show that Defendant Blair ordered that Santiago be deprived of his personal property and moved to a cell without bedding, running water or a working toilet. After Santiago protested these conditions, Blair stopped by his cell and told him that "things are going to get worse." Such conduct constitutes retaliation. As the Eight Circuit noted in its prior decision in this case, "A prisoner has the right under the First Amendment to petition for redress of grievances under a prison's grievance procedure." *Santiago*, 707 F.3d at 991, citing *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010). "Conduct that retaliates against the exercise of a constitutionally protected right . . . is actionable even if the alleged retaliatory conduct does not itself rise to the level of a constitutional violation." *Santiago*, 707 F.3d at 994, citing *Van Wyhe v. Reische*, 581 F.3d 639, 658 (8th Cir. 2009).

Respectfully submitted this 30th day of October, 2014.

                **STONE, LEYTON & GERSHMAN,**
                **A PROFESSIONAL CORPORATION**

                By:  /s/ Robb E. Hellwig
                     Robb E. Hellwig       #60570MO
                     7733 Forsyth Boulevard, Suite 500
                     St. Louis, MO  63105
                     (314) 721-7011
                     (314) 721-8660 (fax)
                     rhellwig@stoneleyton.com

                Attorneys for Plaintiff Victor M. Santiago

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 30th day of October, 2014, the foregoing was filed with the Clerk of Court electronically and served was made on the following parties via the CM/ECF system by Notice of Electronic Filing:

> Karin Schute
> Dana Walker Tucker
> Attorney General of Missouri
> Old Post Office Building
> P.O. Box 861
> St. Louis, Missouri 63188

        /s/ Robb E. Hellwig